UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEBRA S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02480-RLY-MJD |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Claimant Debra S. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security

Income ("SSI") under Title XVI of the Act.  For the reasons set forth below, the Undersigned

recommends the District Judge **AFFIRM** the decision of the Commissioner.

## I. Background

Claimant applied for DIB and SSI in April 2023, alleging an onset of disability date of

April 15, 2022.  [Dkt. 8-2 at 11.]  Her application was denied initially and again upon

reconsideration, and a hearing was held before Administrative Law Judge Teresa Kroenecke

("ALJ") on August 13, 2024.  *Id.*  On March 28, 2025, the ALJ determined that Claimant was not

disabled.  *Id.* at 11-24.  The Appeals Council denied Claimant's request for review on October 8,

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the
Southern District of Indiana has adopted the recommendations put forth by the Court
Administration and Case Management Committee of the Administrative Office of the United
States Courts regarding the practice of using only the first name and last initial of any non-
government parties in Social Security opinions. The Undersigned has elected to implement that
practice in this Order.

2025.  *Id.* at 2-4.  Claimant then timely filed her Complaint on December 5, 2025, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II. Legal Standard

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2]  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner—represented by the ALJ—employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled.  20 C.F.R. § 404.1520. Before continuing to step four, however, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record."  *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).  If, at any step, the ALJ

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). The Court will apply that standard in this case.

### III. ALJ Decision

At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of April 15, 2022. [Dkt. 8-2 at 13.] At step two, the ALJ found that Claimant had the following severe impairments: "hidradenitis suppurativa; lumbar degenerative disc disease; and obesity[.]" *Id.* at 14. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can [occasionally] balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. The claimant can have no exposure to extreme heat, humidity, or wetness. She can tolerate moderate exposure to noise as the term "moderate" is defined in the SCO, that is like a business office, department store, grocery store, light traffic, or fast-foo[d] restaurant during off hours.

*Id.* at 19.

At step four, the ALJ found that Claimant was capable of performing past relevant work as a housekeeping cleaner. *Id.* at 23. Accordingly, the ALJ found that Claimant was not disabled. *Id.* at 24.

### IV. Discussion

Claimant raises two issues for review: (1) that the ALJ did not adequately account for limitations arising from her headaches; and (2) that the ALJ erred in conducting the subjective symptom analysis of her hidradenitis suppurativa. [Dkt. 10 at 4.] The Undersigned will address each of these issues in turn.

#### A. Headaches

The ALJ found that Claimant's headaches were a non-severe impairment. She provided the following explanation for this determination:

> [T]he claimant has reported experiencing intermittent migraines/headaches. She was prescribed medications prior to the period at issue, which was restarted in August 2023 based on continued complaints. At the hearing, she testified that she spends time in a quiet room when they occur. Objective findings are unremarkable, including observations that she appeared comfortable with normal neurological functioning. There is little indication that the claimant requires more than a mild limitation on her functioning in accordance with SSR 19-4p. Thus, her migraine headaches are considered nonsevere.

[Dkt. 8-2 at 14.]

The ALJ noted that the state agency consultant considered Claimant's headaches to be a severe impairment initially, but not on reconsideration. *Id.* at 22. The ALJ found the opinion on

4

reconsideration more persuasive because "the evidence . . . does not establish that her migraines were any more than intermittent" and "generally were controlled with conservative, routine care and management[.]" *Id.* The ALJ concluded that her headaches required "some additional restrictions with respect to environmental restrictions" beyond the restrictions recommended by the state agency consultant. *Id.* In assessing Claimant's RFC, the ALJ determined that she "can tolerate moderate exposure to noise." *Id.* at 19.

Claimant argues that the ALJ erred at step two by determining that her headaches were a non-severe impairment. [Dkt. 10 at 12-14.] At most, this determination is harmless error. "Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019). "Either way, the ALJ must later consider the limitations imposed by all impairments, severe and non-severe." *Id.* Here, the ALJ found that Claimant's hidradenitis suppurativa and other impairments were severe and proceeded past step two. [Dkt. 8-2 at 14.] Thus, the ALJ's determination that Claimant's headaches were non-severe is not grounds for reversal.

Claimant next argues that the ALJ did not adequately incorporate the limitations arising from her headaches into her RFC. She argues that "providing moderate exposure to noise does little to actually accommodate" her headaches because she "has reported significant light sensitivity, blurred vision, and the need to lay down in a dark and silent room." [Dkt. 10 at 15.] She also argues that the frequency of her headaches may lead to a level of absenteeism that would preclude full-time employment. *Id.* at 15-16.

The Undersigned finds that the record before the ALJ supports a finding that Claimant's headaches do not "constitute more than a mild limitation in her functioning," and that the ALJ's subjective symptom analysis with respect to her headaches was not "patently wrong." *See*

*Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (holding that courts must afford an ALJ's credibility determinations special deference and may only reverse if those determinations are patently wrong).

Claimant's primary care provider recorded her headache symptoms during an appointment in April 2021, which was about a year before her alleged onset date. [Dkt. 8-7 at 74.] He characterized the condition as "chronic" and "intermittent" and noted that her "pain is moderate." He also noted that "[p]ertinent negatives include no abdominal pain, abnormal behavior, anorexia, blurred vision, coughing, ear pain, eye redness, facial sweating, fever, hearing loss, insomnia, loss of balance, muscle aches, nausea, neck pain, numbness, scalp tenderness, sinus pressure, sore throat, visual change, vomiting, weakness or weight loss." *Id.* He specifically noted that "[n]othing aggravates the symptoms." She had tried the medication Imitrex, which provided moderate relief. *Id.* Her headaches were "stable," and her primary care provider recommended continuing with her current treatment plan. *Id.* at 79.

The only other treatment record in which Claimant complained of headaches is from another appointment with her primary care provider in August 2023. *Id.* at 125-29. During that appointment, she reported that her headaches had become a daily occurrence and were "gradually worsening." *Id.* at 125. Still, her primary care provider noted a lack of associated neurological and other symptoms, meaning that she did not have any auditory changes, visual changes, aura, dizziness, syncope, vertigo, light-headedness, neck pain, nausea, or vomiting. *Id.* at 125, 128. He again noted that "[n]othing aggravates the symptoms." *Id.* at 125. He resumed her prescription for Imitrex, which had been discontinued previously. *Id.* at 129.

During her disability hearing, Claimant testified that her primary reason for seeking disability benefits was hidradenitis suppurativa, and the majority of her attorney's questions

concerned the limitations arising from that condition.  [Dkt. 8-2 at 47.]  She did, however, testify about the limitations arising from her headaches.  *Id.* at 51.  She testified that in the last year, her headaches "haven't worsened, they've actually kind of slowed down just a little bit.  I get maybe two or three a month now instead of every week."  *Id.*  She testified that when she gets headaches, she has "nausea" and "extreme[] sensitivity to light," which causes her to lie down in a dark and quiet room.  *Id.*  The headaches can last from three to four hours, up to all day.  *Id.* The ALJ asked Claimant, "do you take anything for your pain?"  *Id.* at 55.  Claimant answered, "I'm only taking Ibuprofen and Tylenol."  *Id.*

Given her medical records and her testimony at the disability hearing, the ALJ reasonably concluded that Claimant's headaches impose no more than a mild limitation on her functioning. Her treatment for this condition was decidedly conservative.  For a while she took a single prescription medication that provided moderate relief; by the time of her disability hearing, she was only taking over-the-counter medications for pain.[3]  *See* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (in conducting the subjective symptom analysis, the ALJ "will consider the type, dosage, effectiveness, and side effects of any medication" as well as "treatment other than medication"). Further, Claimant's testimony that her headaches cause nausea and sensitivity to light conflicts with her primary care provider's notations in her medical records.  *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (holding that the ALJ reasonably rejected disability claims that conflicted with treatment records).

Although Claimant stated in an August 2023 appointment that she experienced headaches every day, she had "*maybe* two or three a month . . . instead of every week" during the year

---

[3] Imitrex is a medication that treats acute pain from migraine headaches.  *See* https://www.mayoclinic.org/drugs-supplements/sumatriptan-oral-route/description/drg-20074356 (last visited July 28, 2026).

before the disability hearing in August 2024.  [Dkt. 8-2 at 51 (emphasis added).]  Ultimately, the subjective symptom analysis is a credibility determination—entitled to substantial deference— here, Claimant is instead asking the Court to reweigh the conflicting evidence in her favor, which it may not do.  *See Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023) ("We review the record as a whole but do not substitute our own judgment for that of the Commissioner; we do not reconsider facts, reweigh evidence, resolve conflicts in the evidence, or decide issues of credibility.").

Claimant's other arguments with respect to her headaches are unpersuasive.  She argues that an ALJ may not rely on imaging studies to discredit a Claimant's testimony about the frequency or severity of headaches.  [Dkt. 10 at 12-14.]  But the ALJ did no such thing.  Instead, the ALJ found that Claimant "appeared comfortable with normal neurological functioning." [Dkt. 8-2 at 14.]  This statement is consistent with Claimant's medical records, in which her primary care provider noted a lack of neurological symptoms such as blurred vision, aura, dizziness, vertigo, and sensitivity to light.  [Dkt. 8-7 at 125, 129.]  Claimant also argues that the ALJ erred by relying on the fact that her headaches were "intermittent" in finding that they only caused mild limitations.  But "intermittent" is an accurate characterization of her headaches, and it contrasts with her earlier report that she was temporarily having headaches every day.  The ALJ did not discredit her claims about the severity of her symptoms solely because they were intermittent; instead, the ALJ considered this factor as one among many.

In sum, the ALJ reasonably determined that Claimant's headaches cause no more than mild functional limitations, and she incorporated those limitations into the RFC by restricting Claimant to work environments with moderate noise. Thus, the ALJ's determination that Claimant's headaches were non-severe is, at most, harmless error.

## B. Hidradenitis Suppurativa

The ALJ determined that Claimant's hidradenitis suppurativa is a severe condition that restricts her to light work with additional ambulating and environmental limitations. [Dkt. 8-2 at 19.] Claimant argues that the ALJ erred in assessing her subjective symptoms for this condition and the limitations arising from them. The Court disagrees.

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process. First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including, but not limited to, the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The Court must afford the ALJ's determination special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson*, 615 F.3d at 751; *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

In determining that Claimant's condition did not make her disabled, the ALJ made the following findings:

> Apart from some observations of reduced range of motion, objective evidence from visits in 2024 include observations that she was comfortable and in no acute distress with little evidence of skin ulcers, rash, active wounds, or erythema. There are few records of routine emergency department or other such visits for

9

> exacerbated flares or outbreaks, nor is there indication that her dermatologist recommended more significant treatment modalities for the management of her symptoms. Therefore, while the claimant requires a combination of exertional and nonexertional restrictions in addition to environmental protections due to her hidradenitis suppurativa, the evidence does not establish that it precludes her from work altogether.

[Dkt. 8-2 at 21.]

Claimant challenges the ALJ's findings with respect to her infrequent emergency room visits or other such visits for exacerbated flares or outbreaks. Her medical records show that she underwent incision and drainage procedures in August 2022 and May 2023, and that she received a steroid injection in September 2023. [Dkt. 8-7 at 7, 166, 295.] During an appointment on January 24, 2023, she reported having "gone to the ED multiple times over the last several months for incision and drainage." *Id.* at 166. And during her August 2022 appointment, she stated that she had gone to a "med check" appointment five days earlier for a boil. *Id.* at 2. Thus, during a period of more than two years, the medical record shows that she had approximately three to six appointments for flares or outbreaks, with the last appointment occurring about eleven months before her disability hearing.

Although Claimant estimated that she had an additional three to four emergency room visits in the year before her disability hearing, those visits do not appear in the medical record. [Dkt. 8-2 at 54-55.] Claimant now argues that the medical record is "likely" incomplete and that the ALJ should have sought to obtain additional emergency room records that might exist. [Dkt. 10 at 21.] The Court does not agree because Claimant's attorney stated at the disability hearing that she had reviewed the medical records and confirmed that they were complete. [Dkt. 8-2 at 42.] Thus, she has waived this issue for judicial review by inviting the error, if it was error at all, in the proceedings before the ALJ. *See Figved v. Colvin*, 103 F. Supp. 3d 954,

961 (N.D. Ill 2015) (arguments that a claimant failed to raise during the administrative proceedings are waived for judicial review) (collecting cases).

Claimant relies on *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), for the proposition that the ALJ had an independent obligation to marshal relevant medical evidence despite her counsel's representation that the medical record was complete, but *Nelms* is distinguishable. First, the claimant in *Nelms* proceeded without an attorney during the proceedings before the ALJ. *Id.* at 1098. Second, there was a significant gap in treatment records—two years of no treatment records whatsoever—that should have alerted the ALJ that the record was incomplete. *Id.* Third, the claimant presented an appendix of relevant medical records on judicial review, proving that relevant medical records did exist but were not considered by the ALJ. Here, by contrast, Claimant was represented by counsel in the proceedings before the ALJ. [Dkt. 8-2 at 38.] The ALJ affirmatively asked questions at the disability hearing to make sure the record was complete before issuing a decision. *Id.* at 42. There is no significant gap in the medical records during the alleged period of disability; instead, Claimant merely speculates that there might be some additional records from this period that were not included. Claimant has not submitted an appendix of the supposedly missing emergency room records, and it is not clear at this time that any such records actually exist. As *Nelms* explained, courts "generally uphold[] the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation" and "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Nelms*, 553 F.3d at 1098. Thus, *Nelms* is distinguishable from the present case, and Claimant has not shown that the ALJ erred in failing to marshal additional medical evidence.

Claimant also challenges the ALJ's finding that her treatment has been largely conservative, consisting mostly of medications, creams, heat, and ice for pain.  Specifically, she argues that she "clearly had lost her insurance, and her treatment options were limited."  [Dkt. 10 at 22.]  This argument is not entirely consistent with the record.  It is true that Claimant temporarily did not have insurance after she lost her job, which is a fact that the ALJ expressly acknowledged in her opinion.  [Dkt. 8-2 at 20 ("during a treatment visit in August 2022, she reported that she had been on Humira with good results for two years; however, when she lost her medical insurance around the time she stopped working, she could no longer receive such treatments.").]  But by the time of her disability hearing, Claimant was receiving insurance through the Healthy Indiana Plan ("HIP"), which is Indiana's Medicaid program for qualified adults.  [Dkt. 8-2 at 45.]  Thus, a lack of insurance coverage did not limit her treatment options at the time of her disability hearing, and the ALJ expressly acknowledged that the lapse in her insurance coverage resulted in a temporary termination of her Humira prescription.

Claimant next argues that it was error for the ALJ "to rely on a perception of a lack of aggressive treatment absent evidence of accepted, appropriate treatment" that is more aggressive than what she received for her condition.  [Dkt. 10 at 23.]  But as discussed above, the ALJ noted that Claimant's procedures for serious flare ups (*i.e.*, incision and drainage, or steroid shots) were infrequent, so her treatment typically involved medication, creams, and home remedies.  Further, the medical record establishes that there are more aggressive surgical interventions for Claimant's condition than the ones she received.  *See* [Dkt. 8-7 at 185 ("Surgery can drain and remove the painful bumps.  For severe cases, the healthcare provider may cut out the entire area of affected skin or destroy it with a laser.").]  Thus, Claimant's argument regarding a lack of more aggressive treatment options is unpersuasive.

Finally, Claimant argues that it was error for the ALJ to rely on medical appointments during which she did not have ulcers and was not in acute distress.  During her consultative examination in October 2023, she "appeared comfortable[,] could get on and off the examination table without support," had "no skin ulcers" on her extremities, and no masses on her abdomen. [Dkt. 8-2 at 368.]  Claimant argues "it is unlikely that a consultative examiner examined her more intimate and private areas of groin, axillae (underarms), and breasts, which is where [her] HS occurs."  [Dkt. 10 at 23.]  As an initial matter, this argument conflicts with Claimant's testimony that the boils and lesions "occur all over [her] body," including her abdomen.  [Dkt. 8-2 at 47.]  Second, the Undersigned does not agree that a consultative examiner would "likely" refuse to examine the intimate parts of Claimant's body given that he is a physician who was tasked with examining, among other conditions, her hidradenitis suppurativa.  To the extent that the ALJ erred in considering a lack of hidradenitis suppurativa symptoms during appointments for unrelated conditions, such an error would be harmless, if it was error at all.  *See Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are."); *Walcott v. Berryhill*, 2019 WL 2494165, at *8 (S.D. Ind. Feb. 5, 2019) ("Even if this court were to hold that the ALJ should have expressly addressed Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting Plaintiff's subjective complaints.").

In sum, the ALJ relied on appropriate considerations, *i.e.*, conservative treatments and infrequent procedures for severe flare ups, in her subjective symptom analysis of Claimant's hidradenitis suppurativa. Therefore, her analysis was not patently wrong and does not merit reversal.

## V. Conclusion

For the reasons described above, the Magistrate Judge recommends that the District Judge **AFFIRM** the Commissioner's decision that Claimant was not disabled.  Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b).  The failure to file objections within 14 days of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure.

Dated:  31 JUL 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

14